**Sarah Ashby SAWTELL,**
**Plaintiff–Appellant,**

v.

**E.I. DU PONT DE NEMOURS AND COMPANY, INC., a Delaware Corporation,**
**Defendant–Appellee.**

No. 92–2208.

United States Court of Appeals,
Tenth Circuit.

April 19, 1994.

---

John W. Boyd (Joseph Goldberg, with him on the briefs) of Freedman, Boyd, Daniels, Peifer, Hollander, Guttmann & Goldberg, Albuquerque, NM, for plaintiff-appellant.

Kenneth L. Harrigan (Kathryn D. Lucero of Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, NM, Barry Fish and Janet Napolitano of Lewis and Roca, Phoenix, AZ, with him on the briefs) of Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, NM, for defendant-appellee.

Before ANDERSON, TACHA and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Sarah Ashby Sawtell appeals from a summary judgment for the defendant E.I. du Pont de Nemours and Company ("DuPont"). Her complaint in this diversity action alleged claims in products liability. The corpus of her claims was that DuPont manufactured polymers inappropriately used in temporomandibular joint prostheses causing a foreign body reaction. The foreign body reaction resulted in bone degeneration, extreme pain, and five operations for Ms. Sawtell.

The district court granted DuPont's summary judgment motion and dismissed the action as time barred by the New Mexico three-year statute of limitations. N.M.Stat. Ann. § 37–1–8 (Michie 1990 Repl.).[1] The district court specifically concluded, in an oral ruling, Ms. Sawtell knew or should have known she had been injured by the implants more than three years before she sued DuPont.

---

1. 37–1–8. Actions against sureties on fiduciary bonds; injuries to person or reputation.

Actions must be brought ... for an injury to the person or reputation of any person, within three years.

On appeal, Ms. Sawtell argues the proper time of accrual of her claim was when she first knew or should have known her injuries were caused by DuPont's wrongful conduct. She also claims summary judgment was improper because there exist disputes as to material issues of fact. Finally, she argues the district court erred in refusing to toll the action while a similar class action was filed in Minnesota. She seeks reversal of the district court's order of dismissal but also moves for certification of this matter to the New Mexico Supreme Court.

## I

Ms. Sawtell asks this court, under New Mexico law, to apply the "discovery" rule to products liability actions. She argues on appeal the district court misapplied the rule by determining the statute of limitations began to run at the time she knew that her implants caused her injuries. Although New Mexico courts have not yet addressed the application of the discovery rule in products liability actions, we can anticipate the reaction of the New Mexico courts by the principles of New Mexico case law. We also may examine decisions from other jurisdictions to anticipate what the New Mexico courts would do if faced with this particular problem. *Adams–Arapahoe Joint Sch. Dist. No. 28–J v. Continental Ins. Co.*, 891 F.2d 772, 774 (10th Cir.1989).

■ Historically, statutes of limitations began to run on a plaintiff's cause of action against the wrongdoer. However, courts have realized that a plaintiff may, for various reasons, lack the knowledge necessary to understand that legal damage has occurred. A discovery rule delays the accrual of a cause of action. Thus, under a typical discovery rule, the statute of limitations begins to run at the time the plaintiff knew or with reasonable diligence should have known of the damage and the cause of the damage.

State courts first applied the discovery rule in medical malpractice cases because the injuries or causes of the injuries in medical malpractice are frequently difficult for plaintiffs to discern. *See Roberts v. Southwest Community Health Serv.*, 114 N.M. 248, 837 P.2d 442 (1992). Some state courts further applied the discovery rule to other claims commonly resting on a plaintiff's blameless ignorance of the damage at the time of the defendant's wrongful action. For example, the discovery rule has been applied in professional malpractice suits,[2] negligence actions involving latent diseases,[3] defamation actions if publication was secretive,[4] negligent cancellation of insurance policy suits,[5] and in suits alleging childhood sexual abuse.[6]

State courts have taken a variety of stances in products liability cases. Some states still apply the statute of limitations in its traditional way. In these states, the statute of limitations begins to run when the defendant committed the wrongful act or when the plaintiff was injured regardless of when the plaintiff became aware of the wrongful act or the injury. *See, e.g., Atwood v. Sturm, Ruger & Co.*, 823 P.2d 1064 (Utah 1992) (accrual on date of the injury); *Erickson v. Scotsman, Inc.*, 456 N.W.2d 535 (N.D.1990) (accrual of statute of limitations at the time of the inju-

2. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill.2d 240, 198 Ill.Dec. 786, 633 N.E.2d 627 (1994) (legal malpractice); *Leonhart v. Atkinson*, 265 Md. 219, 289 A.2d 1 (1972) (accounting malpractice); *Steelworkers Holding Co. v. Menefee*, 255 Md. 440, 258 A.2d 177 (1969) (architectural malpractice); *Mattingly v. Hopkins*, 254 Md. 88, 253 A.2d 904 (1969) (engineering malpractice); *Grunwald v. Bronkesh*, 131 N.J. 483, 621 A.2d 459 (1993) (legal malpractice).

3. *Harig v. Johns–Manville Prods. Corp.*, 284 Md. 70, 394 A.2d 299 (1978) (latent disease from exposure to asbestos in the work place).

4. *Staheli v. Smith*, 548 So.2d 1299 (Miss.1989) (if the publication was secretive or inherently undiscoverable then accrual occurs at the time the plaintiff should have discovered the defamation).

5. *Gazija v. Nicholas Jerns Co.*, 86 Wash.2d 215, 543 P.2d 338 (1975) (discovery rule is appropriate due to the fiduciary relationship).

6. *Evans v. Eckelman*, 216 Cal.App.3d 1609, 265 Cal.Rptr. 605 (1990); *Meiers–Post v. Schafer*, 170 Mich.App. 174, 427 N.W.2d 606 (1988); *Hammer v. Hammer*, 142 Wis.2d 257, 418 N.W.2d 23 (App.1987); *see also Callahan v. State*, 464 N.W.2d 268 (Iowa 1990); *Petersen v. Bruen*, 106 Nev. 271, 792 P.2d 18 (1990).

ry).[7] In most states, however, a plaintiff's lack of knowledge of a product's defect causing personal injury affects the statute of limitations if a reasonably prudent and intelligent person could not, without specialized knowledge, have been made aware of such cause. *See, e.g., Owens–Illinois, Inc. v. Edwards,* 573 So.2d 704 (Miss.1990) (en banc) (involving latent diseases). In these cases, the cause of action begins to accrue when the injured person knew, or by the exercise of reasonable diligence should have discovered, the defect or the cause of the injury. *E.g., Burgess v. Eli Lilly & Co.,* 66 Ohio St.3d 59, 609 N.E.2d 140 (1993).[8] Similarly, if there is fraudulent concealment of the defect in the product, then the statute of limitations does not begin to run until the fraudulent concealment should have been discovered. *See Palmer v. Borg–Warner Corp.,* 838 P.2d 1243, 1251 (Alaska 1992).

The New Mexico Supreme Court has recently adopted the discovery rule in medical malpractice cases. *See Roberts,* 837 P.2d 442. In *Roberts,* the court declared it was joining the majority of jurisdictions by recognizing "the cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim

exists." *Id.* at 449. The court focused on the majority position of other jurisdictions and on policy concerns to reach its decision to use the discovery rule in medical malpractice suits. *Id.* at 450 (the court's concerns of basic fairness to the defendant is balanced against the awareness that an injury may "not necessarily manifest itself at the time of the negligent act.... [And a plaintiff] may be unable to ascertain the cause of th[e] pain.").

Products liability suits are similar to medical malpractice suits: many jurisdictions have extended the discovery rule to products liability cases and products liability cases include many of the same policy concerns found in medical malpractice suits. Based on these coincidences, we could conclude the New Mexico Supreme Court would eventually adopt/use the discovery rule in products liability cases as well as medical malpractice actions. However, since the New Mexico Supreme Court extended the discovery rule to medical malpractice cases so recently, it seems unlikely that the state would be applying it in products liability cases so soon. The *Roberts* court noted that New Mexico does not extend the discovery rule in other mal-

---

7. *See also, Wojcik v. Almase,* 451 N.E.2d 336 (Ind.App.1983) (accrual occurs at the time of the injury not at the time of the discovery of harm; accrual occurs when all elements of the products liability cause of action are met); *Bates v. Little Co. of Mary Hosp.,* 108 Ill.App.3d 137, 63 Ill.Dec. 887, 438 N.E.2d 1250 (1982) (if it was a traumatic event, then accrual of the action is at the time of the injury).

8. *See also, Miller v. Armstrong World Indus., Inc.,* 817 P.2d 111 (Colo.1991) (en banc) (an asbestos products liability case in which the statute of limitations begins to run when the plaintiff knew or should have known of all material facts essential to show the elements of the cause of action and not at the mere discovery of the physical process leading to the injury); *Franzen v. Deere & Co.,* 334 N.W.2d 730 (Iowa 1983) (in a products liability suit the cause of action accrues upon the discovery of the injuries, however a plaintiff may plead discovery of the defect); *Pennwalt Corp. v. Nasios,* 314 Md. 433, 550 A.2d 1155 (1988) (medical products liability suit, the cause of action accrues when the plaintiff knew or should have known he has a cause of action, i.e., when he has knowledge of probable manufacturer wrongdoing or product defect that probably caused the injury); *Moll v. Abbott Labs.,* 444

Mich. 1, 506 N.W.2d 816 (1993) (in a pharmaceuticals products liability suit the cause of action accrues upon the discovery of the injuries and the discovery of a causal connection between the injury and the defendant's breach of duty); *Anthony v. Abbott Labs.,* 490 A.2d 43 (R.I.1985) (in a drug products liability case, the action accrues at the time the plaintiffs know of or with reasonable diligence would have known of the wrongful conduct of the manufacturer); *White v. Johns–Manville Corp.,* 103 Wash.2d 344, 693 P.2d 687 (1985) (en banc) (in a products liability and asbestosis suit, the discovery rule is applicable because of the latent nature of the injury); *Ohler v. Tacoma Gen. Hosp.,* 92 Wash.2d 507, 598 P.2d 1358 (1979) (en banc) (discovery rule applies in products liability cases if the product was medical in nature whose causal connection to the injuries may not be discovered until well after the product has been in use); *Hickman v. Grover,* 178 W.Va. 249, 358 S.E.2d 810 (1987) (the action accrues at the time the plaintiff knew or should have known he has been injured, the identity of the product's maker, and the product's causal relation to the injury); *Doe v. American Nat'l Red Cross,* 176 Wis.2d 610, 500 N.W.2d 264 (1993) (a tainted blood transfusion products liability suit, the statute of limitations begins to run upon the discovery of the injury not on the date of the injury).

practice actions. *Id.* 837 P.2d at 449 n. 8. Also, the New Mexico Supreme Court stated a cause of action for personal injury not involving medical malpractice accrues at the time of the injury.[9] *Roberts*, 837 P.2d at 449.

We need not resolve whether New Mexico would apply the discovery rule in medical products liability suits, however, because even with the discovery rule Ms. Sawtell's action accrued more than three years before she initiated her lawsuit. For this same reason, we need not certify the question of controlling state law to the New Mexico Supreme Court.

In early 1984, after experiencing severe jaw pain, Ms. Sawtell had her natural menisci from her left and right temporomandibular joint replaced with prostheses manufactured by Vitek. Within several months after the operation, Ms. Sawtell's acute jaw pain returned. Her doctor replaced the implants with different Vitek prostheses in December of 1984, but this did not permanently eliminate her pain. Ms. Sawtell's doctor noticed her bone was degenerating, and he tried to alleviate her pain through another operation and through the use of narcotics. Ms. Sawtell consulted with the Mayo Clinic in June 1987. Then in September of 1987, Ms. Sawtell had two operations to remove the Vitek prostheses and to implant bone grafts.

In April 1989, Ms. Sawtell sued Vitek claiming damages for personal injuries arising from defects in Vitek's implants. During the course of discovery in that litigation, Ms. Sawtell learned Vitek created the prosthesis material, trade name of Proplast®, from a DuPont polymer, trade name of Teflon®. On September 20, 1990, after Vitek declared bankruptcy, Ms. Sawtell sued DuPont alleging DuPont's polymers were the cause of her injuries.

Looking at the record in the light most favorable to Ms. Sawtell and applying her version of the discovery rule for products liability suits, she still fails to state a cause of action. Summary judgment based on the statute of limitation was proper. The undisputed evidence indicates Ms. Sawtell had enough facts to make out the defect "element" of her products liability cause of action. She should have known the specific cause of her injuries before September 1987.

By September 1987, Ms. Sawtell had undergone three operations on her temporomandibular joint and was in the midst of having the prostheses permanently removed. She had been told by her doctor the implants caused a foreign body reaction, and in June she met with specialists at the Mayo Clinic who determined the source of her injuries was the Proplast®/Teflon® implants. With reasonable diligence Ms. Sawtell should have known, if she did not already know, the specific cause of her pain and suffering before September 1987. Ms. Sawtell's conclusory claim that she did not actually know is insufficient to defeat the summary judgment motion. Actual knowledge under any of the proposed discovery rules is not required to accrue the cause of action if the plaintiff "should have known."

What a plaintiff should have known is a factual question usually reserved for the jury. *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). However, if the essential facts are undisputed and allow only one conclusion, the plaintiff would have known with reasonable diligence the cause of the implants' defect by September 1987, then summary judgment is proper. *See id.* at 1387. Based on the record, reasonable minds may not differ that Ms. Sawtell knew or should have been aware the Proplast®/Teflon® caused her injury. There are no material facts in dispute; therefore, we affirm the district court's grant of summary judgment.

## II

Ms. Sawtell next argues the running of the statute of limitations should have been tolled under the "equitable tolling" doctrine of *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974),

---

**9.** " '[T]he limitation period begins to run from the time the injury manifests itself in a physically objective manner *and* is ascertainable.' " *Crumpton v. Humana, Inc.*, 661 P.2d 54, 55 (N.M.1983) (quoting *Peralta v. Martinez*, 90 N.M. 391, 564 P.2d 194, 197 (N.M.Ct.App.1977) (emphasis in the original)).

while a similar class action suit was pending in Minnesota. If the district court's refusal to toll the statute of limitations resides in the grant of summary judgment, we review the refusal de novo. *Phillips Petroleum Co. v. Lujan,* 4 F.3d 858, 860 (10th Cir.1993).

Discussing the "equitable tolling" doctrine in *American Pipe,* the Supreme Court sought to enhance judicial economy by eliminating the need to file duplicative or protective motions to intervene in class actions before the statute of limitations expired. 414 U.S. at 550–51, 94 S.Ct. at 764–65. The doctrine suspends application of the statute of limitations to putative class members while a decision on class certification is pending. *Id.* at 554, 94 S.Ct. at 766. Although the Court's decision in *American Pipe* concerned only those who sought to intervene, the Court later broadened the "equitable tolling" doctrine to toll the statute of limitations for all potential class members. *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 350, 103 S.Ct. 2392, 2395–96, 76 L.Ed.2d 628 (1983). The filing of a class action suit tolls the statute of limitations for all asserted class members, and the statute of limitations remains tolled "until class certification is denied." *Id.* at 353–54, 103 S.Ct. at 2397–98.

Between March 1989 and May 1990, three class action suits against Vitek and DuPont were filed in Minnesota. These class actions alleged personal injuries from Proplast®/Teflon® temporomandibular implants. The plaintiffs in each case moved for certification of a class consisting solely of persons who received the implants in Minnesota. The

motions for class certification were denied in April and May 1990.

Counsel for the Appellee argues *American Pipe* does not apply to a state claim heard in a federal court solely on diversity grounds because no great federal interest compels the use of federal equitable tolling principles. We need not resolve this question, which is currently disputed among the circuits, of the effect of *American Pipe* on federal diversity suits because Ms. Sawtell was not a putative member of the Minnesota class action.

The evidence before this court indicates the class was intended to be Minnesota residents only. The class action suits were initiated within the Minnesota state court system and pursuant to the Minnesota class action statute. The complaints did not specify a national class.[10] Although the complaints filed in the Minnesota class actions were broad in their descriptions of the class, when the plaintiffs moved for class certification a month later, the narrowness of the class definitions was clear. The plaintiffs moved to certify classes of "those who received the Proplast/Teflon Interpositional Implant in Minnesota."

Ms. Sawtell has presented no evidence supporting the inference she was a putative member of the class.[11] She was a resident of New Mexico, and her operations were performed in New Mexico. The Minnesota actions were limited to Minnesota residents; therefore, Ms. Sawtell could not have joined the suits. The Supreme Court held " 'the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have

**10.** The first complaint in Minnesota stated

Plaintiff brings this action on behalf of herself and all other individuals similarly situated.... The Class consists of all persons who now are or have been recipients of surgical implants of Vitek's Proplast TMJ Interpositional Implants, and who have suffered damage as a result of the implantation of the device.

**11.** To avoid confusion, we note a federal district court in the northern district of Illinois dealt with the tolling question in a similar case. *See Ganousis v. E.I. du Pont de Nemours & Co.,* 803 F.Supp. 149 (N.D.Ill.1992) (in a products liability suit against DuPont involving the Proplast®/Teflon® implant, the plaintiff argued her suit was equitably tolled by the Minnesota class actions).

The district court determined the Minnesota cases could toll the statute of limitations but only for one month. The court held the tolling period ceased at the time of the certification motion.

It is apparent from the *Ganousis* opinion, the district court had different evidence to consider than do we. We do not have evidence, beyond the complaints and the motions for class certification, of the motivation of the class action plaintiffs in defining the class. Even if we had evidence available to us to support an inference that Ms. Sawtell may have been a putative member of the class initially, one month would not salvage Ms. Sawtell's timing deficiencies. For these reasons, our ruling on the motion for summary judgment is unaffected by the district court's analysis in *Ganousis.*

been parties had the suit been permitted to continue as a class action.'" *Crown, Cork & Seal,* 462 U.S. at 353–54, 103 S.Ct. at 2397–98 (quoting *American Pipe,* 414 U.S. at 554, 94 S.Ct. at 766). Ms. Sawtell would not have been a party to the Minnesota suits had any of them continued as a class action. The statute of limitations should not be tolled.

Unfortunately, Ms. Sawtell did not begin her suit within the statutory time frame. Accordingly, we AFFIRM the district court's order.